UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRENDA S. HEYWOOD,

    Plaintiff,

v.                               Case No:   2:17-cv-316-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Brenda S. Heywood's Complaint, filed on June 7, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income. The Commissioner filed the Transcript of the proceedings (Doc. 16) (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum (Doc. 23), setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED**.

**I.     Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

    **A.     Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 416.905.[1]  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

B.    **Procedural History**

On July 24, 2014, Plaintiff filed an application for supplemental security income with an alleged onset date of December 30, 2004.  (Tr. at 88, 98, 166-69).  The application was denied initially on October 14, 2014, and upon reconsideration on December 5, 2014.  (*Id.* at 96, 109).  A hearing was held before Administrative Law Judge ("ALJ") William G. Reamon on September 19, 2016.  (Tr. at 37-87).  The ALJ issued an unfavorable decision on December 9, 2016.  (Tr. at 19-32).  The ALJ found Plaintiff not to be under a disability since July 24, 2014, the date Plaintiff's application was filed.  (Tr. at 32).

On April 18, 2017, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-4).  Plaintiff filed a Complaint in this Court on June 7, 2017.  (Doc. 1).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 17).  This case is ripe for review.

---

[1]  After Plaintiff filed her application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.  *See, e.g.*, 20 C.F.R. §§ 416.920a, 416.920c, and 416.927 (effective Mar. 27, 2017); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  The Court applies the rules and regulations in effect at the time of the ALJ's decision because the regulations do not specify otherwise.  *See Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 521 (11th Cir. 2017).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 24, 2014, the application date. (Tr. at 24). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "lumbar spine degenerative disc disease (DDD) with facet arthropathy and disc protrusions, cervical spine spondylosis, osteoarthritis (OA) and degenerative joint disease (DJD) at the right hip, medial compartment joint space loss at the bilateral knees, and obesity." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 26).

After review of the record, the ALJ determined Plaintiff's RFC. Specifically, the ALJ determined that Plaintiff had the RFC to perform "sedentary work" except:

> [S]he could occasionally lift and carry up to 20 pounds and frequently up to 10 pounds. She is capable of standing and/or walking for 2 hours in an 8[-]hour workday and sitting for about 6 hours in an 8[-]hour workday. Occasionally, she is capable of crouching, crawling, and climbing ramps or stairs. She could frequently kneel, stoop, and balance. However, she should never climb ladders, ropes, or scaffolds.

(*Id.* at 27).

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a secretary as it is generally performed. (*Id.* at 31). As a result, the ALJ determined Plaintiff has not been under a disability since July 24, 2014, the date the application was filed. (*Id.* at 32).

### D.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II.   Analysis

Plaintiff raises four issues on appeal:

1. Whether substantial evidence supports the ALJ's finding that Plaintiff can perform her past work as a secretary.

2. Whether substantial evidence supports the ALJ's evaluation of Plaintiff's depressive disorder at step [two] of the sequential evaluation and subsequent RFC finding.

3. Whether the ALJ provided proper notice to Plaintiff of the issues on appeal.

4. Whether substantial evidence supports the weight the ALJ gave to the opinion of treating physician J.R. Collins, M.D.

(Doc. 23 at 16, 25, 34, 36). The Court addresses these issues below, beginning with Plaintiff's second issue concerning the ALJ's evaluation of Plaintiff's depressive disorder.

### A.   Step Two Evaluation

Plaintiff argues there was evidence in the record that Plaintiff suffers from an unspecified depressive disorder that the ALJ should have found to be severe at step two and should have accounted for in his RFC finding. (Doc. 23 at 25-29). Specifically, Plaintiff argues treatment records reflect Plaintiff suffered from anxiety, depression, crying, and anhedonia and a

consultative examination by Robert J. Kurzhals, Ph.D., revealed Plaintiff had issues with memory, concentration, and comprehension. (*Id.* at 26 (citing Tr. at 286, 296)). Plaintiff argues these issues are severe because limitations in understanding, remembering, and carrying out instructions affect her ability to perform basic work activities. (*Id.* at 26-27). Plaintiff contends that the ALJ erred: (1) in considering her ability to perform activities of daily living as an indication of her ability to complete tasks in a more demanding and more stressful work environment; and (2) in rejecting Dr. Kurzhals' opinion based on a lack of objective evidence. (*Id.* at 27-28).

The Commissioner argues in response that substantial evidence supports the ALJ's finding at step two that Plaintiff's medically determinable impairment of depression was not severe because the ALJ properly found only mild restrictions using the Commissioner's "special technique" for evaluating mental impairments. (*Id.* at 29-34).

At step two of the sequential evaluation, the ALJ analyzes the severity of a claimant's impairments. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 416.905(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely

6

medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ is required to consider a claimant's impairments in combination, whether severe or not. *Id.*

> A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities. . . . The determination of whether the claimant suffers from a severe impairment acts as a filter. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, while a claim is denied if the claimant does not suffer from a severe impairment, the finding of any severe impairment, regardless of whether it qualifies as a disability or results from a single impairment or combination thereof, is sufficient to satisfy the second step of the SSA's sequential analysis. *Id.* Nonetheless, beyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling.

*Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ found at step two that Plaintiff had the severe impairments of DDD with facet arthropathy and disc protrusions, cervical spine spondylosis, OA and DJD at the right hip, medial compartment joint space loss at the bilateral knees, and obesity. (Tr. at 24). Thus, even if the ALJ erred in finding that Plaintiff's mental impairments were not severe, the ALJ satisfied the step two analysis by finding other impairments severe. *See Griffin*, 560 F. App'x at 841-42. Therefore, any error is harmless as long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairment – including her alleged mental impairments. *See id.*

Moreover, a review of the record shows that the ALJ specifically considered Plaintiff's mental impairments at step two. (Tr. at 24-25). The ALJ conducted a psychiatric review technique and found Plaintiff had no more than a mild limitation in the first three functional areas and no episodes of decomposition in the fourth area. (*Id.* at 25).[3]

The ALJ further considered these findings in evaluating Plaintiff's RFC. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

When determining Plaintiff's RFC, the ALJ stated that he considered all of Plaintiff's symptoms and the extent to which these symptoms that can reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. at 27); *see Griffin*, 560 F. App'x at 842 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)

---

[3] Under 20 C.F.R. § 416.920a, an ALJ is required to utilize the "special technique" dictated by a psychiatric review technique form ("PTRF") when evaluating mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). The technique requires evaluation of four separate function areas on a four-point scale as to how the impairment affects the claimant: "activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition." *Id.* The ALJ then incorporates the results into his findings and conclusions. *Id.* at 1213-14.

(noting a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings). In addition, the ALJ also considered the medical evidence regarding Plaintiff's mental impairments, explaining he gave the opinions of William A. Shipley, Ph.D., and Joelle J. Larsen, Ph.D. great weight in determining Plaintiff's mental impairment was non-severe. (Tr. at 30, 92-93, 104). The ALJ discounted Dr. Kurzhals' opinion that Plaintiff had mild concentration problems and mild depression because his examination findings did not support his opinions, and he only examined Plaintiff one time. (*Id.* at 30 (citing Tr. at 295-97)). A one-time examining physician's opinion is not entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Moreover, internal inconsistency in a physician's records is also a sufficient basis to discount his opinions. *See id.* at 1159. The Court therefore finds no error with regard to the ALJ's treatment of Dr. Kurzhals' opinion.

Plaintiff cites a treatment note to support a finding that she suffered from depression that she argues the ALJ ignored; however, the ALJ is not required to cite every piece of evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ in this case did consider Plaintiff's mental impairment, but ultimately found it non-severe, particularly in light of her statements to Dr. Kurzhals that she did not describe herself as depressed and indicated that she was happy most of the time. (Tr. at 30 (citing Tr. at 295)). The additional treatment note does not establish the severity of Plaintiff's mental impairment, and it is Plaintiff's burden to establish the effect of her impairments on her ability to work. *See Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work, nor does it 'undermine the ALJ's determination' regarding her ability to work." (quoting *Moore*, 405 F.3d at 1213 n.6)). Moreover, the question for the

9

Court is whether substantial evidence supports the ALJ's decision, not whether there is evidence in the record to support a different conclusion. *See Barnes*, 932 F.2d at 1358 ("The court need not determine whether it would have reached a different result based upon the record.").

The Court finds that even if the ALJ should have found Plaintiff's mental impairments severe, the ALJ fulfilled his responsibility to consider Plaintiff's mental impairments in the remaining steps of her disability analysis. *See Griffin*, 560 F. App'x at 842. Here, the ALJ considered Plaintiff's severe and non-severe impairments in combination. Therefore, the Court finds that even if the ALJ erred in his severity finding, the error was harmless because the ALJ found other severe impairments and considered all of Plaintiff's impairments in combination.

In sum, the record demonstrates that the ALJ properly considered Plaintiff's severe and non-severe impairments at step two. Moreover, even if the ALJ erred in failing to find Plaintiff's impairments severe at step two of the sequential evaluation, the error was harmless because the ALJ considered all of Plaintiff's impairments, whether severe or non-severe, in determining Plaintiff's RFC. The Court, therefore, affirms on this issue.

### B. The Weight Given to Plaintiff's Treating Sources

Plaintiff argues that the ALJ erred in giving the opinion of Plaintiff's treating physician J.R. Collins, M.D., only mild weight because Dr. Collins gave specific diagnoses and his opinion was supported by other objective medical evidence, including MRIs, X-rays, and CT scans from the same time, and opinions of Nina Dereska, M.D., and K. Julian, M.D. (Doc. 23 at 37). Plaintiff therefore argues the ALJ did not have good cause for rejecting Dr. Collins' opinion. (*Id.* at 37).

The Commissioner responds that the ALJ is responsible for assessing Plaintiff's RFC and accordingly medical opinions as to this issue are not determinative. (*Id.* at 38). The

Commissioner notes Dr. Collins had only seen Plaintiff once, on the same day he completed a Determination of Disability for the State of Indiana form rendering the opinion at issue here. (*Id.* at 39 (citing Tr. 309-15)). The Commissioner therefore concludes Dr. Collins was not entitled to deference as Plaintiff's treating physician. (*Id.* at 39 n.7). Moreover, the Commissioner argues the reasons the ALJ identified to afford Dr. Collins' opinion mild weight constitute good cause and were supported by substantial evidence. (*Id.* at 39-40).

### 1. Legal Standard for Weight of Physician's Opinion

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and, based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Id.* Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citations omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight

11

given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). When evaluating a medical opinion, the ALJ considers various factors, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). The ALJ need not explicitly address these factors. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

Without a statement specifying the weight given to medical opinions, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips*, 357 F.3d at 1240. The Eleventh Circuit has concluded that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*

### 2. Dr. Collins' Opinion

Dr. Collins rendered his opinion by completing State Form 1380. (Tr. at 309-15). On this form, Dr. Collins responded to how long Plaintiff had been treated by him with "today, 4/27/11." (*Id.* at 310). For diagnostic tests and evaluations, Dr. Collins listed a thyroid ultrasound showing multiple benign-appearing thyroid nodules on April 20, 2011. (*Id.*). He

noted Plaintiff had 13 abdominal surgeries relative to her impairments, listed three medications she was taking (Celexa 20 mg, Tylenol 500, and ibuprofen), and stated she was compliant with her medications and treatment. (*Id.*). After noting her height, weight, and vital signs, Dr. Collins also noted under the box entitled "abnormalities" that he was told an ultrasound found a mitral valve prolapse in the past that caused fainting but, at the time of the appointment, Plaintiff had gone over ten (10) years without fainting. (*Id.* at 311). Dr. Collins checked "yes" for dyspnea and edema, but either checked "no" or left the remaining boxes blank. (*Id.*). As to Plaintiff's nervous system, Dr. Collins listed carpel tunnel syndrome and dysthymia. (*Id.* at 312). As to her musculo-skeletal system, Dr. Collins opined that her bones, joints, and extremities were not normal due to bilateral carpal tunnel syndrome, bilateral knee pain, bilateral hand pain, right shoulder pain, and right hip pain. (*Id.*). Dr. Collins diagnosed Plaintiff with arthritis, indicated she had mild osteophytes, and observed her abdomen was diffusely tender. (*Id.* at 312-13). Asked to list Plaintiff's diagnosis and his prognosis, Dr. Collins listed abdomen pain/adhesions and right hip pain as her prime diagnosis and CTS (carpal tunnel syndrome) and back pain/scoliosis as her secondary diagnosis. (*Id.* at 313).

When asked if Plaintiff's impairments together or individually affect her ability to perform work, Dr. Collins opined that Plaintiff's impairments did impair work ability and were likely to continue for over 30 years. (*Id.* at 314). He listed: (1) no treatment for abdominal adhesion; (2) surgery for carpal tunnel syndrome; (3) possible surgery for the right hip; and (4) checked "yes" for whether the limitations are substantial enough to impair Plaintiff's ability to perform labor or services or engage in a useful occupation. (*Id.*). Dr. Collins then filled in a chart of Plaintiff's limitations, opining that she: (1) cannot lift, push/pull, squat, or crawl; (2) is limited in her ability to bend or climb, or perform housework; (3) is weak and drops items when

grasping or manipulating; and (4) is limited on her right side for reaching above her shoulders, repetitive leg movements for her right leg, and left knee. (*Id.* at 315). Dr. Collins further opined that Plaintiff could sit, stand, and drive for 10 to 15 minutes and could walk for 10 minutes. (*Id.*). Dr. Collins certified that he examined Plaintiff on April 27, 2011, and listed his specialty as a "G.P." (*Id.*).

> The ALJ explained that Dr. Collins' opinions merited only mild weight, explaining:
>
> First, Dr. Collins provides no explanation of what impairments cause the stated limitations. He noted only vague descriptions, such as "right hip pain" or bilateral knee pain" rather than medical diagnoses. Second, Dr. Collins is the claimant's primary care provider, not an orthopedic specialist. Finally, this opinion was rendered prior to the period being adjudicated in the present case. Accordingly, mild weight is appropriate.

(*Id.* at 30).

The ALJ therefore provided explicit reasons for discounting Dr. Collins opinion, and the Court determines that these reasons constitute good cause and substantial evidence supports them. Although Dr. Collins listed carpal tunnel syndrome and osteoarthritis as diagnoses, Dr. Collins does not explain how these diagnoses relate to the limitations he found. (*See id.* at 309-15). Moreover, there are no treatment notes in which Dr. Collins makes any other diagnoses or provides any insight into how he reached his opinions based on a single examination of Plaintiff. Indeed, a one-time examining physician is not considered a treating physician whose opinion is entitled to deference. *See Crawford*, 363 F.3d at 1160. Moreover, the imaging reports Plaintiff cites do not establish the basis for Dr. Collins' opinions as they were taken after he completed his form. (*See* Doc. 23 at 37 (citing Tr. at 268, 271, 387)).

While the ALJ's remaining reasons, that the opinion was three (3) years before Plaintiff's application and that Dr. Collins is not a specialist, might not be sufficient to discount Dr. Collins' opinion on their own, when combined with the lack of support for the opinion and the extremely

14

short (consisting of one day) treatment history, they do support a finding of good cause. The Court therefore affirms on this issue.

## C. Past Relevant Work

Plaintiff argues the ALJ erred in finding that she could perform her past work as a secretary. (Doc. 23 at 17-20). Specifically, Plaintiff argues that she had not performed the job of secretary long enough to learn how to do it, given that it was a skilled position and a composite job. (*Id.*).

The Commissioner argues Plaintiff has not established that she did not learn the secretary job in eleven months and has not established that her position was a composite one as she described her position as a secretary and did not testify to additional duties or dispute the VE's testimony classifying the position. (*Id.* at 20-25).

At step four of the sequential evaluation, the burden lies with Plaintiff to show that she cannot return to her past relevant work as she actually performed it or as it is performed in the general economy. *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 830 (11th Cir. 2013); *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010). Even though the burden lies with Plaintiff, the ALJ must consider all of the duties of Plaintiff's past relevant work and evaluate Plaintiff's ability to perform that work despite her impairments. *Levie*, 514 F. App'x at 830. Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Before determining whether a claimant can perform her past relevant work, the ALJ first determines the claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Based on the

individual RFC, if the claimant is capable of doing the past relevant work, then the ALJ will find the claimant is not disabled. 20 C.F.R. § 404.1560(b)(2)-(3).

The Court finds no error in the ALJ's determination that Plaintiff's work as a secretary was past relevant work and that she was capable of performing it. The Court rejects Plaintiff's argument that the secretary position was not past relevant work because she spent less than a full year on the job and, therefore, did not work long enough to learn the job. (*See* Doc. 23 at 17-20). Although Plaintiff argues the SVP level of 6 for secretary indicates it could take up to two years to learn, the Specific Vocational Preparation for a job is meant to be "a guideline to help determine how long it would generally take to learn a particular job." POMS DI 25005.015(D), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005015; *see also Bond v. Comm'r of Soc. Sec.*, No. 6:15-cv-333-ORL-GJK, 2016 WL 3906929, at *3 (M.D. Fla. July 19, 2016) (internal citations omitted) (finding that "each SVP level is the amount of time a 'typical worker' needs to learn the job," but "does not mandate that every worker needs to perform a particular job for the period of time associated with that job's SVP"). Here, Plaintiff offers no argument that she actually failed to learn how to do the job of secretary. Indeed, other than a technicality based on her own calculations, Plaintiff provided no proof showing that she did not adequately learn the job. (*See* Doc. 23 at 17-20).

Furthermore, this Court has previously rejected arguments that a plaintiff did not learn how to do the job when the plaintiff failed to raise objections to the VE's testimony at the hearing. *See Turner v. Comm'r of Soc. Sec.*, No. 2:13-cv-485-FTM-DNF, 2014 WL 4542975, at *4 (M.D. Fla. Sept. 12, 2014) (finding that the plaintiff did not meet her burden of proving that she did not learn how to do the job while performing it, in part, because she did not raise objections during the VE's testimony). Here, when the VE testified at the hearing that Plaintiff

could perform her past relevant work as a secretary, Plaintiff did not raise any argument or objection that she did not adequately learn the job. (Tr. at 81). As a result, the Court finds that Plaintiff failed to meet her burden of showing that she did not learn how to do the job of secretary. *See Turner*, 2014 WL 4542975, at *4.

In reaching this conclusion, the Court finds Plaintiff's composite job argument unpersuasive. As noted above, Plaintiff argues that she cannot do the job of secretary as it is generally performed because her past relevant work is a composite job. (Doc. 23 at 17-20). Plaintiff contends that her job required additional duties. (*Id.* at 20). In essence, what Plaintiff actually argues is that the job of secretary does not count as past relevant work at all because the job, as she performed it, required duties of other jobs. (*See id.*). Based on these other duties, Plaintiff argues that there is no basis for the ALJ to evaluate the job of secretary as past relevant work. (*See id.*).

A composite job is "one that has significant elements of two or more occupations and, as such, has no counterpart in the DOT." *Paxton v. Colvin*, No. 8:12-CV-583-T-TGW, 2013 WL 1909609, at *4 (M.D. Fla. May 8, 2013) (citing SSR 82-61, 1982 WL 31387, at *2 (1982)). Nevertheless, Plaintiff "bears the burden of proving that [she] cannot return to [her] past relevant work." *Levie*, 514 F. App'x at 831 (citation omitted). Moreover, Plaintiff "must demonstrate an inability to perform [her] 'past *kind* of work, not that [she] merely be unable to perform a specific job [she] held in the past.'" *Id.* (emphasis in original; citing *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986)). Additionally, Social Security Ruling 82-61 addresses the agency's process in situations where there is a composite job. Specifically, when there is a composite job, the situation "will be evaluated according to the particular facts of each individual case. For those instances where available documentation and vocational resource material are not

17

sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert." SSR 82-61, 1982 WL 31387, at *2.

In this case, the ALJ asked a VE to testify as to Plaintiff's past relevant work. (Tr. at 81). After having heard Plaintiff's testimony and reviewing the record, the VE testified that Plaintiff's past relevant work included the position of secretary. (*Id.*). Plaintiff made no objection as to the VE's testimony that her past relevant work included the job of secretary. In fact, Plaintiff makes no argument now that the ALJ erred in relying on the VE's testimony. Accordingly, based on the unobjected-to testimony of the VE, the Court finds that the ALJ was not wrong to conclude that Plaintiff's past relevant work included the position of secretary.

Furthermore, Plaintiff made no specific argument that she could not perform the job requirements of a secretary as generally performed. At most, Plaintiff only demonstrated that she merely cannot perform a specific job she held in the past. *See Levie*, 514 F. App'x at 831. Plaintiff has not demonstrated "an inability to perform [her] "past *kind* of work." *See id.* (emphasis in original; citations omitted). Moreover, the ALJ – relying on the VE's testimony – found that Plaintiff could perform the job of secretary as it is generally performed. (Tr. at 31). Accordingly, although Plaintiff may not have been able to perform her past relevant work as a secretary as she actually performed it, Plaintiff has not established that she could not perform the job of a secretary as it is generally performed. Thus, the Court finds that the ALJ did not err in finding that Plaintiff could perform her past relevant work as a secretary as it is generally performed. The Court affirms on this issue.

D.  Notice

Plaintiff argues the ALJ failed to provide her with required notice that he was reconsidering the previously favorable decision that all of her past work was unskilled. (Doc. 23 at 34 (citing 20 C.F.R §§ 416.968(a), 416.1446)). The Commissioner responds that the state agency had not determined her past relevant work was unskilled but rather determined that she was not disabled without addressing her capacity to perform past relevant work. (*Id.* at 35 (citing Tr. at 95)).

> Under 20 C.F.R. § 416.1446:
>
> The issues before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor. However, if evidence presented before or during the hearing causes the administrative law judge to question a fully favorable determination, he or she will notify [the claimant] and will consider it an issue at the hearing.

20 C.F.R. § 416.1446(a).

The Court agrees with the Commissioner that the issue of Plaintiff's past relevant work had not been decided at the agency level and, therefore, was not a decision in Plaintiff's favor that the ALJ questioned. The state agency decisions, both initially and on reconsideration, explicitly stated, "A finding about the capacity for PRW has not been made. However, this information is not material because all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education, and RFC. Therefore, the individual can adjust to other work." (Tr. at 95, 107). Contrary to Plaintiff's assertion, this was not a finding in her favor. (Doc. 23 at 34). Moreover, in the Notice of Hearing, the ALJ informed Plaintiff that he would follow a step-by-step process to determine whether she was disabled and listed the steps as including whether Plaintiff could do the kind of work she did in the past. (Tr. at 147). The Notice also directed Plaintiff to notify the ALJ if she disagreed with

any of the issues, which the record does not reflect Plaintiff did. (*Id.* at 148). The Court therefore affirms on this issue.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards. *See McRoberts*, 841 F.2d at 1080.

Accordingly, the Court hereby **ORDERS** that:

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 6, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record